UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>Plaintiff, )<br><br>v. )<br><br>DPC ENTERPRISES, LP )<br><br>and )<br><br>DPC INDUSTRIES, INC. )<br><br>Defendants. ) | CIVIL CASE NO.   8:15-cv-50 |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

NATURE OF ACTION

1. This is a civil action brought against DPC Enterprises, L.P. (DPCE) and DPC Industries, Inc. (DPCI) (collectively "Defendants"), pursuant to Section 113(b) of the Clean Air Act (CAA), 42 U.S.C.§ 7413(b), and Section 325(c) of the Emergency Planning and Community Right-to-Know Act (EPCRA), 42 U.S.C. § 11045(c), for violations of the CAA and EPCRA at the DPCE's chlorine repackaging facility in Festus, Missouri (DPCE Facility) and for violations of the CAA at the DPCI's chlorine repackaging facility in Bellevue, Nebraska (DPCI Facility). The United States seeks the assessment of civil penalties for violations of the Risk Management Program provisions of Section 112(r) of the CAA, 42 U.S.C. § 7412(r); the reporting

requirements of Section 312 of EPCRA, 42 U.S.C. § 11022; and the implementing regulations for both statutes, set forth at 40 C.F.R. Part 68 and 40 C.F.R. Part 370.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and Section 325(c) of EPCRA, 42 U.S.C. § 11045(c).

3. Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), because violations occurred in this district.

## NOTICE

4. Notice of the commencement of this action has been given to the States of Missouri and Nebraska pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## THE DEFENDANTS

5. Defendant DPCE is a limited partnership organized and existing under the laws of the State of Delaware and does business in the State of Missouri as a foreign limited partnership. DPCE is part of a national network of chemical manufacturing, repackaging, and distribution facilities. DPCE's principal place of business is 300 Jackson Hill, Houston, TX 77007.

6. At all times relevant to this Complaint, DPCE operated the DPCE Facility located at 1785 Highway 61, Festus, Missouri 63028. DPCE operates at least six other chlorine repackaging facilities and two chemical warehouses in multiple states.

7. Defendant DPCI is a corporation organized and existing under the laws of the State of Delaware and does business in the State of Nebraska as a foreign corporation. DPCI is part of a national network of chemical manufacturing, repackaging, and distribution facilities. DPCI's principal place of business is 300 Jackson Hill, Houston, TX.

8. At all times relevant to this Complaint, DPCI operated the DPCI Facility located at 11202 South 25th Street, Bellevue, Nebraska 68123. Defendant operates other similar facilities in various locations across the country.

9. The Defendants are each a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).  DPCE is a "person" under Section 329(7) of EPCRA, 42 U.S.C. § 11049(7).

## STATUTORY AND REGULATORY BACKGROUND

### A.  Clean Air Act Section 112(r)

10. Section 112(r) of the CAA, 42 U.S.C. § 7412(r), authorizes the Administrator of EPA to promulgate regulations in order to prevent accidental releases of certain regulated substances and minimize the consequences of releases when they occur.

11. Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), requires the Administrator to establish a list of regulated substances, and specifies sixteen initial chemicals to be listed, including chlorine and anhydrous sulfur dioxide.

12. Section 112(r)(5) of the CAA, 42 U.S.C. § 7412(r)(5), requires the Administrator to establish threshold quantities for listed regulated substances.

13. Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), requires the Administrator to promulgate regulations that address release prevention, detection, and correction requirements for listed regulated substances.

14. Pursuant to Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), the regulations set forth at 40 C.F.R. Part 68 require the owner or operator of a stationary source that has more than a threshold quantity of a regulated substance in a process to submit a Risk Management Plan (RMP) that includes a registration that reflects all covered processes.

15. Under Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C), and 40 C.F.R. § 68.3, "stationary source" means any buildings, structures, equipment, installations, or substance emitting stationary activities which belong to the same industrial group, which are located on one or more contiguous properties, which are under the control of the same person, and from which an accidental release may occur.

16. Under 40 C.F.R. § 68.3, "process" means any activity involving a regulated substance, including any use, storage, manufacturing, handling, or on-site movement of such substances, or any combination of these activities.

17. Pursuant to 40 C.F.R. § 68.10(d), a stationary source with a process subject to the OSHA Process Safety Management standard, 29 C.F.R. 1910.119, is also subject to the Program 3 requirements detailed in 40 C.F.R. § 68.12(d), including the requirements to develop and implement a management system; conduct a hazardous assessment; implement an accidental release prevention program; develop and implement an emergency response program; and submit data on prevention program elements as part of the RMP.

18. Pursuant to Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and 40 C.F.R. § 68.150, the owner or operator of a stationary source that has more than a threshold quantity of a regulated substance in a process must submit the RMP no later than the latter of June 21, 1999, or the date on which a regulated substance is first present above the threshold quantity in a process, with resubmittals due, at a minimum, every five years under 40 C.F.R. § 68.190.

B.  Emergency Planning and Community Right-to-Know Act Section 312

19. Section 312 of EPCRA, 42 U.S.C § 11022, and the implementing regulations set forth at 40 C.F.R. Part 370, govern the submission of emergency and hazardous chemical inventory forms by owners and operators of covered facilities.

20. Pursuant to Section 312(a) of EPCRA, 42 U.S.C. § 11022(a), and 40 C.F.R. Part 370, the owner or operator of a facility at which hazardous chemicals are present is required to prepare and submit an emergency and hazardous chemical inventory form (Inventory Form) to the State Emergency Response Commission (SERC), Local Emergency Planning Committee (LEPC), and local fire department annually by March 1, containing data with respect to the preceding calendar year for each hazardous chemical present in excess of the minimum reporting threshold amount.

21. Pursuant to Section 312(b) of EPCRA, 42 U.S.C. § 11022(b) and 40 C.F.R. § 370.20, the reporting threshold amount for all hazardous chemicals present at a facility at any one time during the preceding year is 10,000 pounds per chemical.

22. Pursuant to Section 311(e) of EPCRA, 42 U.S.C. § 11021(e), "hazardous chemical" has the meaning given such term by 29 C.F.R. § 1910.1200(c).

## ENFORCEMENT PROVISIONS – CAA

23. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), states that the Administrator may commence a civil action against any person that is the owner or operator of an affected source, for a civil penalty and/or for a permanent or temporary injunction, whenever such person has violated or is violating any requirement or prohibition of the CAA referenced therein, including Section 112(r) of the CAA, 42 U.S.C. § 7412(r).

24. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997; $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004; $32,500 per day for each violation occurring between March 16, 2004 and January 12, 2009; and $37,500 per day for each violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 4, 104 Stat. 890 (1990), 28 U.S.C. § 2461 note (as amended), against any person whenever such person has violated, or is in violation of, any requirement or prohibition of the CAA, including Section 112(r), 42 U.S.C. § 7412(r).

## ENFORCEMENT PROVISIONS – EPCRA

25. Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), authorizes the Administrator to commence a civil action against a person who violates certain provisions of EPCRA, including but not limited to Section 312.

26. Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), authorizes a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997.  Pursuant to the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and EPA inflation adjustment regulations, 40 C.F.R. § 19, the maximum penalty has been adjusted to $27,500 per day for each violation occurring between January 30, 1997 through March 15, 2004; $32,500 per day for each violation occurring between March 16, 2004, through January 12, 2009; and $37,500 per day for each violation occurring after January 12, 2009.

GENERAL ALLEGATIONS

A. Clean Air Act Section 112(r) Violations – DPCE

27. At all times relevant to this Complaint, DPCE has been, and continues to be, the operator of the DPCE Facility.

28. The DPCE Facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C), and 40 C.F.R. § 68.3.

29. The DPCE Facility has at least two "processes" within the meaning of 40 C.F.R. § 68.3, including a chlorine repackaging process and a chlorine and sulfur dioxide warehousing process.

30. Chlorine and sulfur dioxide are regulated substances under Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. § 68.3, with respective threshold quantities of 2,500 pounds and 5,000 pounds, according to 40 C.F.R. § 68.130, Table 1.

31. In September 2005, an EPA inspection revealed that DPCE had more than 2,500 pounds of chlorine and more than 5,000 pounds of sulfur dioxide in processes at the DPCE Facility.

32. DPCE is subject to the requirements of Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, as an operator of a stationary source that has more than a threshold quantity of a regulated substance in a process.

33. DPCE is also subject to the Program 3 requirements detailed in 40 C.F.R. § 68.12(d), because the DPCE Facility's processes are subject to the OSHA Process Safety Management standard at 29 C.F.R. 1910.119.

34. DPCE violated 40 C.F.R. § 68.15(c) when it failed to define the lines of authority and document the names and positions of those responsible for implementing individual RMP requirements at the DPCE Facility.

35. DPCE violated 40 C.F.R. §§ 68.42 and 68.168 when it failed to include in its five-year history and RMP all accidental releases from covered processes that resulted in deaths, injuries, or significant property damage at the DPCE Facility, and the data required for each release.

36. DPCE violated 40 C.F.R. § 68.65(d) when it failed to include the design codes and standards employed at the DPCE Facility in a compilation of process safety information (PSI) before conducting any process hazard analysis (PHA).

37. DPCE violated 40 C.F.R. § 68.67(c) when it failed to address the consequences of failure of engineering and administrative controls in the PHA, and failed to include a qualitative evaluation of a range of the possible safety and health effects of failure of controls in the PHA.

38. DPCE violated 40 C.F.R. § 68.67(e) when it failed to establish a system to promptly address the PHA findings and recommendations; ensure that the recommendations were resolved in a timely manner and that the resolution was documented; complete actions as soon as possible; and develop a written schedule of when these actions were to be completed.

39. DPCE violated 40 C.F.R. § 68.73(d) when it failed to document the serial numbers or other identifiers of process equipment subject to inspection or testing at the DPCE Facility.

40. DPCE violated 40 C.F.R. § 68.95(a) when it failed to develop and implement an emergency response plan (ERP) that includes procedures for informing the public and local emergency response agencies about accidental releases, and when it failed to review and update the ERP as required.

41. DPCE violated 40 C.F.R. § 68.160(b) when it failed to complete a registration form with required and accurate data, including the county in which the DPCE Facility is located, the Dun and Bradstreet number of the DPCE Facility, and the telephone number of the emergency contact.

42. DPCE violated 40 C.F.R. § 68.175 when it failed to provide required information in its RMP, including the dates of the most recent reviews and revisions of multiple aspects of the Program 3 Prevention Program for the DPCE Facility's processes.

43. DPCE violated 40 C.F.R. § 68.195(b) when it failed to correct the RMP as required to reflect any change in emergency contact information.

44. Each of DPCE's above-listed failures to comply with 40 C.F.R. Part 68 constitutes a separate violation of Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7).

### B.  Emergency Planning and Community Right-to-Know Act Violations – DPCE

45. Pursuant to Section 312(b) of EPCRA, 42 U.S.C. § 11022(b) and 40 C.F.R. § 370.20, the minimum reporting threshold amount for all hazardous chemicals present at a facility at any one time during the preceding year is 10,000 pounds per chemical.

46. Aluminum sulfate, calcium hypochlorite, potassium permanganate, and calcium hydroxide are hazardous chemicals under Section 312(c) of EPCRA, 42 U.S.C. § 11022(c).

47. Aluminum sulfate, calcium hypochlorite, potassium permanganate, and calcium hydroxide were present at the Facility in quantities above the minimum reporting threshold for at least the years 2004 and 2005.

48. DPCE violated Section 312(a) of EPCRA, 42 U.S.C. § 11022(a), and 40 C.F.R. Part 370 when it failed to include the documented quantities of aluminum sulfate, calcium hypochlorite, potassium permanganate, and calcium hydroxide in the Inventory Forms DPCE submitted to the LEPC, SERC, and local fire department for at least the years 2004 and 2005.

### C.  Clean Air Act Section 112(r) Violations – DPCI

49. At all times relevant to this Complaint, DPCI has been, and continues to be, the operator of the DPCI Facility, which distributes and repackages inorganic chemicals and compressed gasses and manufactures sodium hypochlorite, commonly known as bleach.

50. The DPCI Facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C), and 40 C.F.R. § 68.3.

51. The DPCI Facility has at least three "processes" within the meaning of 40 C.F.R. § 68.3, including a chlorine repackaging process, a chlorine and sulfur dioxide warehousing process, and an anhydrous ammonia warehousing process.

52. Chlorine, sulfur dioxide, and anhydrous ammonia are regulated substances under Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. § 68.3, with respective threshold quantities of 2,500 pounds, 5,000 pounds, and 10,000 pounds, according to 40 C.F.R. § 68.130, Table 1.

53. In January 2007, an EPA inspection revealed that DPCI had more than 2,500 pounds of chlorine, more than 5,000 pounds of sulfur dioxide, and more than 10,000 pounds of anhydrous ammonia in processes at the DPCI Facility.

54. DPCI is subject to the requirements of Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, as an operator of a stationary source that has more than a threshold quantity of a regulated substance in a process.

55. DPCI is also subject to the Program 3 requirements detailed in 40 C.F.R. § 68.12(d), because the DPCI Facility's processes are subject to the OSHA Process Safety Management standard at 29 C.F.R. 1910.119.

56. DPCI violated 40 C.F.R § 68.67(a) when it failed to perform an initial PHA on covered processes at the DPCI Facility.

57. DPCI violated 40 C.F.R. § 68.67(c) when it failed to address the consequences of failure of engineering and administrative controls in the PHA, and failed to include a qualitative evaluation of a range of the possible safety and health effects of failure of controls in the PHA.

58. DPCI violated 40 C.F.R. § 68.67(e) when it failed to promptly address, document the resolution of, and develop a written schedule for completing action items in the PHA.

59. DPCI violated 40 C.F.R. § 68.79(a) when it failed to certify that it had evaluated compliance with the Program 3 provisions at least every three years.

60. DPCI violated 40 C.F.R. § 68.79(d) when it failed to promptly determine and document an appropriate response to each of the findings of the compliance audit and document that deficiencies had been corrected.

61. DPCI violated 40 C.F.R. § 68.190(b) when it failed to revise and update the RMP at least once every five years from the date of its initial submission or most recent update.

62. Each of DPCI's above-listed failures to comply with 40 C.F.R. Part 68 constitutes a separate violation of Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7).

FIRST CLAIM FOR RELIEF

(DPCE – CAA Section 112(r) Violations)

63. Paragraphs 1 through 48 are realleged and incorporated herein by reference.

64. As an operator of a stationary source that had more than 2,500 pounds of chlorine and 5,000 pounds of sulfur dioxide in processes on or before the date of EPA's inspection in September 2005, DPCE violated Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68.

65. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject DPCE to civil penalties of up to $32,500 per day for each violation occurring between March 16, 2004 and January 12, 2009; and $37,500 per day for each violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 4, 104 Stat. 890 (1990), 28 U.S.C. § 2461 note (as amended).

## SECOND CLAIM FOR RELIEF

(DPCE – EPCRA Violations)

66. Paragraphs 1 through 48 are realleged and incorporated herein by reference.

67. DPCE is an operator of a facility subject to the requirements of Section 312(a) of EPCRA, 42 U.S.C. § 11022(a), and 40 C.F.R. Part 370.

68. DPCE had quantities of aluminum sulfate, calcium hypochlorite, potassium permanganate, and calcium hydroxide present at the Facility in excess of the minimum reporting threshold in at least the years 2004 and 2005.

69. DPCE violated the reporting requirements of Section 312(a) of EPCRA, 42 U.S.C. § 11022(a), and 40 C.F.R. Part 370, when it failed to include these quantities in the Inventory Forms submitted to the LEPC, SERC, and local fire department for at least the years 2004 and 2005.

70. Pursuant to Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and EPA inflation adjustment regulations, 40 C.F.R. § 19, DPCE is liable for a civil penalty of up to $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004; $32,500 per day for each violation

occurring between March 16, 2004, through January 12, 2009; and $37,500 per day for each violation occurring after January 12, 2009.

### THIRD CLAIM FOR RELIEF

(DPCI – CAA Section 112(r) Violations)

71. Paragraphs 1 through 26 and 49 through 62 are realleged and incorporated herein by reference.

72. As the operator of a stationary source that had more than 2,500 pounds of chlorine, more than 5,000 pounds of sulfur dioxide, and more than 10,000 pounds of anhydrous ammonia in processes on or before the date of EPA's inspection in January 2007, DPCI violated Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68.

73. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject DPCI to civil penalties of up to $32,500 per day for each violation occurring between March 16, 2004 and January 12, 2009; and $37,500 per day for each violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 4, 104 Stat. 890 (1990), 28 U.S.C. § 2461 note (as amended).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America respectfully prays that this Court:

1. Assess civil penalties against DPCE for up to the amounts provided in the Clean Air Act and Emergency Planning and Community Right-to-Know Act and cited in this Complaint;

2. Assess civil penalties against DPCI for up to the amounts provided in the Clean Air Act and cited in this Complaint; and

3. Grant the United States such other relief as the Court deems just and proper and as the public interest and the equities of the case may require.

RESPECTFULLY SUBMITTED,

FOR THE UNITED STATES
Attorneys for the Plaintiff

2/6/15
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division

/s/ Katherine L. Matthews

KATHERINE L. MATTHEWS
MA Bar 659518
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Telephone: (303) 844-1365
Fax: (303) 844-1350
Email: Kate.Matthews@usdoj.gov


DEBORAH R. GILG
United States Attorney
District of Nebraska

LAURIE KELLY
Assistant United States Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506

OF COUNSEL:

CHRIS DUDDING
Attorney
Office of Regional Counsel, Region 7
U.S. Environmental Protection Agency
901 North 5th Street
Kansas City, KS 66101
913-551-7524