IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No.   8:15CV50 |
| v. | ) | |
| | ) | CONSENT DECREE |
| | ) | |
| DPC INDUSTRIES, INC. and | ) | |
| DPC ENTERPRISES, LP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff United States of America, on behalf of the United States Environmental

Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent

Decree alleging that Defendant DPC Industries, Inc. violated Section 112(r) of the Clean Air Act

("CAA"), and Defendant DPC Enterprises, LP violated Section 112(r) of the Clean Air Act, 42

U.S.C. § 7412(r), and Section 312 of the Emergency Planning and Community Right-to-Know

Act ("EPCRA"), 42 U.S.C. § 11022.

The Complaint against Defendants alleges that Defendants, who operate chlorine

repackaging facilities in Bellevue, Nebraska, and Festus, Missouri, violated reporting

requirements contained in the Clean Air Act's Risk Management Program regulations and in

EPCRA.  The violations alleged are based on deficiencies in each Defendant's Risk Management

Plan discovered during EPA site inspections at the Festus and Bellevue plants.  The Risk

-1-

Management Plan must be developed and implemented pursuant to the Clean Air Act at any facility storing more than a threshold quantity of a regulated substance such as chlorine. In addition, the Complaint alleges that DPC Enterprises, LP failed to comply with EPCRA by submitting deficient emergency planning information to response authorities.

Neither DPC Industries, Inc. nor DPC Enterprises, LP admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and 42 U.S.C. §§ 7413(b) and 11045(c), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because the violations alleged against Defendants in the Complaint are alleged to have occurred in, and Defendant DPC Industries, Inc. conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consents to venue in this judicial district.

2.       For purposes of this Consent Decree, Defendants agree that the Complaint states

claims upon which relief may be granted pursuant to Section 112(r) of the CAA, 42 U.S.C.

§ 7412(r) and Section 325(c) of EPCRA, 42 U.S.C. § 11045(c).

## II.  APPLICABILITY

3.       The obligations of this Consent Decree apply to and are binding upon the United

States, and upon Defendants and any successors, assigns, or other entities or persons otherwise

bound by law.

4.       No transfer of ownership or operation of either Facility, whether in compliance

with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to

ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer,

Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall

simultaneously provide written notice of the prospective transfer, together with a copy of the

proposed written agreement, to EPA Region 7 and the United States Department of Justice, in

accordance with Section XIV of this Decree (Notices).

5.       Defendants shall provide a copy of this Consent Decree to all officers, employees,

and agents whose duties might reasonably include compliance with any provision of this Decree.

Further, Defendants shall provide the relevant portion or portions of this Decree and of any Audit

Action Plan or Supplemental Audit Action Plan as described in this Decree, to any contractor,

including the third-party auditors performing the Corporate Office and Field Audits, retained to

perform work required under this Decree or any Audit Action Plan or Supplemental Audit

Action Plan produced in accordance with this Decree.  In any action to enforce this Consent

Decree, Defendants shall not raise as a defense the failure by any of their officers, directors,

employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

6.      Terms used in this Consent decree that are defined in the CAA or in regulations promulgated pursuant to the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Bellevue Facility" shall mean DPC Industries, Inc.'s chlorine repackaging plant located at 11202 South 25th St., Bellevue, NE 68123.

b.      "Complaint" shall mean the complaint filed by the United States in this action.

c.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIII).

d.      "Corporate Office" shall mean the Defendants' common environmental affairs office, housed at 1919 Jacintoport Blvd., Houston, TX, 77015.

e.      "Covered Process" shall have the definition provided in 40 C.F.R. § 68.3.

f.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

g.      "Defendants" shall collectively mean DPC Industries Inc. and DPC Enterprises LP.

-4-

h.      "Effective Date" shall have the definition provided in Section XV.

i.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.      "Facilities" shall mean Defendants' facilities located in Festus, Missouri, and Bellevue, Nebraska.  When only one of these facilities is referred to, it will be designated by its location, i.e., "Festus Facility" or "Bellevue Facility."

k.      "Festus Facility" shall mean DPC Enterprises' chlorine repackaging plant located at 1785 Highway 61, Festus, MO 63028.

l.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

m.      "Parties" shall mean the United States and Defendants.

n.      "Section" shall mean a portion of this Decree identified by a roman numeral.

o.      "States" shall mean the States of Nebraska and Missouri, unless designated individually by name.

p.      "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

7.      Within 30 Days after the Effective Date of this Consent Decree, Defendant DPC Industries Inc. shall pay the sum of $87,327 and Defendant DPC Enterprises LP shall pay the sum of $111,673 each as a civil penalty, together with interest accruing from the date on which

the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the

date of lodging.

8.      Defendants shall pay the civil penalty due by https://www.pay.gov to the U.S.

Department of Justice in accordance with written instructions to be provided to Defendants,

following entry of the Consent Decree, by the Financial Litigation Unit ("FLU") of the U.S.

Attorney's Office for the District of Nebraska, 1620 Dodge Street, Suite 1400, Omaha, NE

68102-1506, (402) 661-3700.  The payment instructions provided by the FLU shall include a

Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify

all payments required to be made in accordance with this Consent Decree.  The FLU will provide

the payment instructions to:

> Scott Janoe
> Baker Botts L.L.P.
> 910 Louisiana St.
> One Shell Plaza
> Houston, TX 77002
> 713-229-1553
> Scott.Janoe@bakerbotts.com

on behalf of Defendants.  Defendants may change the individual to receive payment instructions

on their behalf by providing written notice of such change to the United States and EPA in

accordance with Section XIV (Notices).  At the time of payment, Defendants shall send notice

that payment has been made: (i) to EPA via email at acctsreceivable.cinwd@epa.gov or via

regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio

45268; and (ii) to the United States via email or regular mail in accordance with Section XIV

(Notices).  Such notice shall reference the CDCS Number and DOJ case number 90-5-2-1-

09973.

-6-

9.      Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

10.      Defendants shall perform audits  at the Corporate Office, Festus Facility, and Bellevue Facility to evaluate compliance with the CAA's Section 112(r) Risk Management Program requirements at 40 CFR Part 68, in accordance with the requirements and deadlines set forth in Paragraphs 11-16, herein.

11.      Audit Performance:  Within thirty (30) Days of the Effective Date, Defendants shall propose to EPA for its approval the name of a third party auditor or auditors and provide such party's or parties'qualifications to perform the audits that meet the requirements of Paragraph 11-16, below.

a.      The proposed auditor for each Audit shall be a knowledgeable and experienced person or firm with expertise in risk management program requirements, as well as expertise in the risk management requirements of each Covered Process at Defendants' Facilities.

b.      Defendants may propose to replace any auditor or may propose to add any additional auditor by submitting a request to EPA pursuant to Paragraphs 17-21 (Approval of Deliverables).  The request shall indicate the reason for the change or addition; the qualifications of the proposed auditor; and any other relevant information.  The proposed auditor shall meet the criteria of subparagraph 11.a above.

12.     Audits: Within ninety (90) Days of EPA's approval of the auditor or auditors, the Defendants perform the audits and complete the Audit Reports as specified in Paragraph 15 herein.  All audits will be conducted in accordance with generally accepted audit practices.

13.     The Corporate Office Audit shall include: the review of 40 C.F.R. Part 68 implementation materials and records for all Covered Processes and interviews with personnel who develop, or aid in developing, or implement, or aid in implementing the Risk Management Program for Defendants' Facilities.  Personnel interviews should include all Corporate Office personnel identified as holding a position in the management system for any of Defendants' Facilities and, as deemed necessary by the third-party auditor, personnel from Defendants' Facilities with relevant process knowledge to assist the auditors by providing process operations input.

a.     Scope of Corporate Office Audit:  The Risk Management Program Audit for the Corporate Office will include the identification of elements of the Risk Management Program for all Covered Processes at the Defendants' Facilities that originate from the Corporate Office, including but not limited to documents developed by the Corporate Office for use at the Facilities, and documents developed by the Corporate Office for use at the Corporate Office, including elements whose implementation is initiated or wholly completed by the Facilities (development may be done by the Corporate Office).

b.     Identification and Evaluation of Applicable Codes & Standards: The Corporate Office Audit will identify, for all recognized and generally accepted good engineering practices (RAGAGEP) identified by the Corporate Office as being applicable to all Covered Processes at the Defendants' Facilities: whether the current version is being used; whether codes

-8-

and standards, including but not limited to Chlorine Institute pamphlets and jurisdictional building, fire, electrical, and mechanical codes are appropriate to the chemicals, processes, and physical facilities; whether any RAGAGEP not identified by the Corporate Office also apply, and if such do apply, the audit shall identify those practices.

       c.    <u>Evaluation of Risk Management Program Elements:</u> In addition to the above, the Corporate Office Audit shall evaluate each of the following elements to determine whether they are adequate.  To the extent that the Corporate Office has a role in Defendants' compliance with any of the following elements at the Facilities, the Corporate Office Audit shall evaluate those elements.  If an element is not handled at all at the Corporate Office level, the Audit Report shall explicitly state that it applies only to the Facilities.

       i.    40 C.F.R. § 68, Subpart A – General Management System.  The Corporate Office Audit shall evaluate whether the management system, as written, meets the requirements of 40 C.F.R. § 68.15; and whether the management system is adequately implemented at each of the Facilities, with clearly delineated lines of authority and decision-making for implementation of the risk management program.  The Audit will also evaluate the effectiveness of the management system, in particular, the development and implementation of the risk management program elements developed by the Corporate Office and disseminated to each Facility.  The Corporate Office Audit will determine whether the lines of communication between the Corporate Office and the Facilities are adequate and effective.

       ii.    40 C.F.R. § 68, Subpart B – Hazard Assessment.  The Corporate Office Audit shall assess compliance with this Subpart, including evaluation of worst-case and alternate-case scenarios, and identification of receptors.

iii.      40 C.F.R. § 68, Subpart D – Program 3 Prevention Program

(1)      40 C.F.R. § 68.65 – Process Safety Information (PSI). The Corporate Office Audit shall confirm the Covered Processes at Defendants' Facilities, including but not limited to repackaging, blending, warehousing, and storage, for all RMP-regulated chemicals, including but not limited to chlorine, sulfur dioxide, and ammonia for compliance with RAGAGEP as identified in part b of this paragraph. While the Corporate Office Audit will cover all aspects of the applicable RAGAGEP, it will specifically address the following areas: safety systems (including but not limited to safety release valves and systems, chlorine detection and alarms, and the emergency action plan); labeling; and overall condition of tanking, valves, and piping. The auditor shall evaluate the PSI to ensure that changes to PSI based on recommendations from incidents are reviewed and integrated into Defendants' PSI, including but not limited to Chlorine Institute Pamphlet 6.

(2)      40 C.F.R. § 68.67 – Process Hazard Analysis (PHA). The Corporate Office Audit shall evaluate whether PHAs required by 40 C.F.R. § 68.67 have been properly performed; whether PHAs have recognized all known hazards for the regulated Covered Process(es), RMP-regulated chemicals, stationary source siting, and factors unique to each Facility (including associated controls and safety systems); whether previously performed PHAs have fully identified issues and root causes of incidents; and whether deficiencies set forth within the PHAs have been resolved adequately and in a timely manner.

(3)      40 C.F.R. § 68.69 – Operating Procedures. The Corporate Office Audit shall evaluate whether operating procedures are current, clear, complete, and consistent with recognized and accepted good engineering practices.

(4)      40 C.F.R. § 68.71 – Training.  The Corporate Office Audit shall evaluate whether training and refresher training is current and adequate.

(5)      40 C.F.R. § 68.73 – Mechanical Integrity.  The Corporate Office Audit shall evaluate whether the mechanical integrity program is adequate and consistent with RAGAGEP.

(6)      40 C.F.R. § 68.75 & 40 C.F.R. § 68.77 – Changes in Process.  The Corporate Office Audit shall evaluate whether Management of Change (MOC) and Pre-Startup Safety Review (PSSR) policies are sufficient, and, to the extent that the Corporate Office is involved in the implementation of MOC and PSSR at the Facilities, that they are being conducted appropriately.  As to MOC, the audit shall assess whether it includes all required elements and whether changes to PSI, PHA, operating procedures, mechanical integrity, training, and other program elements have been completed and documented.  As to PSSR, the audit shall determine whether PSSRs were completed prior to bringing equipment online and whether findings, recommendations, and action items were resolved or implemented.

(7)      40 C.F.R. § 68.79 – Compliance Audits.  The Corporate Office Audit shall evaluate whether each compliance audit conducted during the five years prior to the effective date of this consent decree was properly performed in accordance with 40 C.F.R. § 68.79; whether all elements of 40 C.F.R. § 68 Subpart D were fully evaluated; whether all issues were identified and addressed; and whether action items and time frames were appropriate and were completed in a timely manner.

(8)      40 C.F.R. § 68.81 – Incident Investigation.  The Corporate Office Audit shall include a review of all incidents during the five years prior to effective date of

this consent decree in accordance with 40 C.F.R. §§ 68.42 and 68.81 that should have resulted in an incident investigation.  For incidents or near misses where an investigation occurred, a determination will be made whether the incident investigation was conducted properly, whether findings were appropriate, and whether appropriate action items were developed and implemented.

(9)     Completion of Action Items.  The Corporate Office Audit shall evaluate whether action items arising from PHAs, Compliance Audits, and Incident Investigations are appropriate, are completed in a timely manner, and that such items are fully closed-out.

iv.     40 C.F.R. § 68, Subpart E – Emergency Response.  The Corporate Office Audit shall evaluate whether the emergency response program is adequate, coordinated with local emergency planners/responders, and whether mechanisms for timely notification of first responders and the public are adequate and are being implemented.  Review will also be made of the notification mechanism for notifications to the state emergency response commission(s) and National Response Center.

v.     40 C.F.R. § 68, Subpart G – Risk Management Plan.  The Corporate Office Audit shall evaluate whether the Risk Management Plan for each Facility is updated as required, in a timely manner following accidents or changes in the emergency contact, and that all required elements are included, accurate, and reflective of the program that is implemented at the Facility.

vi.     40 C.F.R. § 68, Subpart H – Other Requirements.  The Corporate Office Audit will evaluate whether the Corporate Office is in compliance with recordkeeping and

-12-

retention requirements, and any additional reporting requirements as specified in Subpart H.

14.   <u>Two Field Audits.</u>  The Field Audits shall include: the review of 40 C.F.R. Part 68

implementation materials and records for all Covered Processes; the inspection of on-site

equipment, conditions, and practices; and interviews with plant personnel including operator

technicians, maintenance personnel, contractors, plant management, administrative personnel,

and participants in specific Risk Management Program related activities such as process hazard

analyses and incident investigations (including personnel from each Facility, the Corporate

Office, and from any of Defendants' other facilities that participated in either the Festus

Facility's or the Bellevue Facility's Risk Management Program implementation activities).  Each

Field Audit will include a review of applicable requirements in the following elements of 40

C.F.R. Part 68 with increased focus on the items listed under each regulatory Subpart below:

a.   40 C.F.R. § 68, Subpart A – General Management System.  Each Field

Audit shall evaluate whether the management system, as written, meets the requirements of 40

C.F.R. § 68.15; and whether the management system is adequately implemented at each Facility,

with clearly delineated lines of authority and decision-making for implementation of the risk

management program.   The Field Audits will also evaluate the effectiveness of the management

system in ensuring Risk Management Program elements developed by the Corporate Office are

communicated and implemented at the facility being audited.

b.   40 C.F.R. § 68, Subpart B – Hazard Assessment. Each Field Audit shall

assess, for the subject Facility, compliance with this Subpart, including evaluation of worst-case

and alternate-case scenarios and identification of receptors.

c.   40 C.F.R. § 68, Subpart D – Program 3 Prevention Program

                i.         Process Safety Information (PSI).  Each Field Audit should evaluate whether the recognized and generally accepted good engineering practices (RAGAGEP) used by Defendants, including but not limited to industry codes, standards, pamphlets, and guidance documents, particularly those produced by the Chlorine Institute, are appropriate to the processes at the subject Facility.

                (1)        Each Field Audit shall evaluate Defendants' RMP Covered Processes, including but not limited to repackaging, blending, warehousing, and storage, for all RMP regulated chemicals, including but not limited to chlorine, sulfur dioxide, and ammonia for consistency with RAGAGEP as identified in Paragraphs 13.b and 14.c.i.

                (2)        Each Field Audit shall evaluate these specifications and ensure they comply with the RAGAGEP identified in the Corporate Office Audit, as referenced in Paragraph 13.b above.

                (3)        Each Field Audit shall confirm that the chlorine handling and repackaging systems are constructed in compliance with current RAGAGEP.  While the Field Audits will cover all aspects of the applicable RAGAGEP, they will specifically address the following areas:  safety systems (including but not limited to safety release valves and systems, chlorine detection and alarms, and the emergency action plan); labeling and overall condition of tanking, valves, and piping.

                (4)        Each Field Audit shall evaluate the PSI to ensure that changes to PSI based on recommendations from incidents are reviewed and integrated into Defendants' PSIs, including but not limited to Chlorine Institute Pamphlet 6.

ii.     40 C.F.R. § 68.67 - Process Hazard Analysis (PHA).  Each Field Audit shall evaluate whether PHAs required by 40 C.F.R. § 68.67 have been properly performed; whether PHAs have recognized all known hazards for the regulated process(es), RMP-regulated chemicals, stationary source siting, and factors unique to each facility; whether previously performed PHAs have fully identified issues and root causes of incidents; and whether deficiencies set forth within the PHAs have been resolved adequately and in a timely manner.

iii.    40 C.F.R. § 68.69 – Operating Procedures.  Each Field Audit shall evaluate whether operating procedures are current, clear, complete, consistent with RAGAGEP, and are being fully implemented at the subject facility.

iv.     40 C.F.R. § 68.71 – Training.  Each Field Audit shall evaluate whether training and refresher training is current, adequate, and understood.  Each Field Audit shall also evaluate whether refresher training is conducted frequently enough.

v.      40 C.F.R. § 68.73 – Mechanical Integrity.  Each Field Audit shall evaluate whether the mechanical integrity program is adequate, consistent with RAGAGEP, and adequately implemented pertaining to all components in all Covered Processes.

vi.     40 C.F.R. §§ 68.75 and 68.77 – Changes in Process. Each Field Audit shall evaluate whether Management of Change (MOC) and Pre-Startup Safety Review (PSSR) are being conducted appropriately.  As to MOC, the Field Audits shall assess whether it includes all required elements and whether changes to PSI, PHA, operating procedures, mechanical integrity, training, and other program elements have been completed and documented.  As to PSSR, the Field Audits shall determine whether PSSRs were completed prior

-15-

to bringing equipment online and whether findings, recommendations, and action items were resolved or implemented.

                vii.    40 C.F.R. § 68.79 – Compliance Audit.  The Field Audits shall evaluate whether each compliance audit conducted during the five years prior to the Effective Date of this Consent Decree was properly performed in accordance with 40 C.F.R. § 68.79, whether all elements of 40 C.F.R. Part 28 Subpart D were fully evaluated, whether all issues were identified and addressed, and whether action items and time frames were appropriate and completed in a timely manner.

                viii.    40 C.F.R. § 68.81 – Incident Investigation.  The Field Audits shall include a review of all incidents at each subject Facility, both actual releases and near-misses during the five years prior to the Effective Date of this Consent Decree in accordance with 40 CFR §§ 68.42 and 68.81 that should have resulted in an incident investigation.  For incidents or near-misses where an investigation occurred, a determination will be made whether the incident investigation was conducted properly, whether findings were appropriate, and whether appropriate action items were developed and implemented.

                ix.    Completion of Action Items.  The Field Audits shall evaluate whether action items arising from PHAs, Compliance Audits, and Incident Investigations are appropriate, are completed in a timely manner, and that such items are fully closed-out.

                d.    40 C.F.R. § 68, Subpart E – Emergency Response.  The Field Audits shall evaluate whether the emergency response program is adequate, coordinated with local emergency responders, and whether mechanisms for timely notification of first responders and the public are adequate and are being implemented.  Review will also be made of the notification

mechanism for notifications to the state emergency response commissions(s) and National Response Center.

      e.      40 C.F.R. § 68, Subpart G – Risk Management Plan.  The Field Audits shall evaluate whether the Risk Management Plan for each facility is updated as required, in a timely manner following accidents or changes in the emergency contact, and that all required elements are included, accurate, and reflective of the program that is implemented at the facility.

      f.      40 C.F.R. § 68, Subpart H – Other Requirements.  The Field Audits shall evaluate whether the Facility is in compliance with recordkeeping and retention requirements, and any additional reporting requirements as specified in this Subpart.

      15.      <u>Audit Reports and Audit Action Plans</u>

      a.      Within 45 days of completion of each of the three audits (including the Corporate Office Audit and the two Field Audits), the third party auditor shall simultaneously submit copies of the respective Audit Report to EPA and to Defendants.  Each Audit Report shall list any findings that the Auditor has judged to be in nonconformance with the procedures, protocols, and guidance established by Defendants, or with the RAGAGEP required to meet the applicable requirements of 40 C.F.R. Part 68 at the time of the Audit.  For each Field Audit, the Audit Report shall assess whether the nonconforming findings from the Corporate Office Audit Report are applicable to the subject Facility, and also shall include an assessment of whether and how the Risk Management Program elements coordinated by the Corporate Office (including, but not limited to, model documents and ensuring use of up-to-date industry codes and standards) may be improved.

b.      Within 60 Days of the auditor's submittal of each Audit Report, Defendants shall submit an Audit Action Plan to EPA that shall outline Defendants' response to each Audit Report's findings, including any measures taken or that will be taken to address such findings, and a schedule for implementing any such measures, pursuant to the requirements of Paragraph 16, below.

c.      Within 60 Days of Defendants' submittal of the third Audit Action Plan, Defendants shall submit a Supplemental Audit Action Plan in which the findings and recommendations from each of the three Audit Reports and the action items developed in the three initial Audit Action Plans are reviewed to determine the applicability of such findings, recommendations and action items at all Defendant's chlorine repackaging plants, as listed in Appendix A, for all Covered Processes.  For the recommendations and action items that are determined to be applicable to any Covered Processes at Defendants' other chlorine repackaging facilities, Defendants shall outline their response to each such recommendation at the other repackaging facilities, including a  detailed timeline for the implementation of applicable action items, pursuant to the requirements of Paragraph 16 below.

16.     Completion of Audit Response Activities

a.      Within six (6) calendar months of the date of its submittal of each Audit Action Plan, and the Supplemental Audit Action Plan respectively, Defendants shall address all findings and recommendations that do not require significant capital expenditures  or engineering estimates that would preclude completion in that time frame.  Within twelve (12) calendar months of the date of its submittal of each Audit Action Plan and of the Supplemental Audit Action Plan respectively, Defendants shall address all findings and recommendations whose

resolution requires significant capital expenditures or engineering estimates, or if resolution cannot be addressed within that 12-month timeframe, shall comply with the requirements of Subparagraph 16.b below.  For the purposes of this Paragraph, "significant capital expenditure" is defined as any expenditure greater than $100,000.

        b.     If resolution of findings and recommendations cannot be completed within the timeframes established in subparagraph (a) above, Defendants may request extended timeframes.  Subject to the sole discretion and approval of EPA, Defendants may request extra time by submitting documentation to EPA that: (i) identifies the unresolved findings and recommendations in the applicable category; (ii) summarizes steps taken to date to address those findings and recommendations; (iii) explains the reasons the findings and/or recommendations have not been addressed; (iv) provides anticipated actions to address the findings and recommendations; and (v) provides a detailed timeline for completion.

     17.    <u>Approval of Deliverables</u>.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.  Specifically, the following plans, reports, or other items are subject to this Section:  Defendants' submission of Audit Reports pursuant to Paragraph 15, Defendants' submission of Audit Action Plans and Supplemental Audit Action Plans pursuant to Paragraph 15.c, Defendants' submission of Audit Response Activity documentation pursuant to Paragraph 16, Defendants' submission of quarterly reports pursuant to Paragraph 23 below, Defendants' request for extension of time pursuant to

Paragraph 16.b, and any revision or resubmission required pursuant to the terms of this Consent Decree.

18.     If the submission is approved pursuant to Paragraph 17.a, Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 17.b or .c, Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section IX of this Decree (Dispute Resolution).

19.     If the submission is disapproved in whole or in part pursuant to Paragraph 17.c or .d, Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

20.     Any stipulated penalties applicable to the original submission, as provided in Section VII of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

21.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendants' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

22.     Permits.  Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other required actions in Defendants' control necessary to obtain such permits or approvals.

## VI.  REPORTING REQUIREMENTS

23.     Within thirty (30) Days after the end of each calendar quarter (i.e., by April 30, July 30, October 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII, Defendants shall submit a quarterly report for the preceding quarter that shall describe the following: (1) the status of the Audits; (2) the status of the Audit Reports; (3) the status of the Audit Action Plans and Supplemental Audit Action Plans; (4) the status of implementation of measures to correct findings; and/or (5) any changes to measures previously reported to address any Audit Report findings or changes to the schedule for implementing such measures.

24.     Whenever any violation of this Consent Decree or any other event affecting Defendants' performance under this Decree, or the performance of their Facilities, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.  Notification under this Paragraph shall be submitted to the persons designated in Section XIV (Notices).  This notification requirement does not supersede or replace any other applicable statutory or regulatory notification requirement.

25.     All reports shall be submitted to the persons designated in Section XIV (Notices). Within 60 Days of receipt of each Audit Response Report, Supplemental Audit Response Report, or quarterly report, EPA will review Defendants' submission, and notify Defendants in writing of EPA's acceptance or disapproval of the submission or any part thereof.  If a submission is disapproved in whole or in part by EPA, or if EPA determines that further action by Defendants is required, EPA will provide written comments to Defendants explaining the basis for its decision and directing Defendants to take further action as required.  Within thirty (30) Days of receipt of EPA's comments pertaining to any submission, or within such longer time as the Parties may agree, Defendants shall amend or revise a disapproved submission, addressing all of EPA's comments, and resubmit same to EPA.

26.     Each report submitted by Defendant under this Section shall be signed by an

official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

27.     This certification requirement does not apply to emergency or similar notifications

where compliance would be impractical.

28.     The reporting requirements of this Consent Decree do not relieve Defendants of

any reporting obligations required by the Clean Air Act, EPCRA, or implementing regulations,

or by any other federal, state, or local law, regulation, permit, or other requirement.

29.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VII.  STIPULATED PENALTIES

30.     Defendants shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified below, unless excused under Section VIII (Force

Majeure).

31.     Late Payment of Civil Penalty.   If a Defendant fails to pay the civil penalty

required to be paid under Section IV of this Decree (Civil Penalty) when due, that Defendant

shall pay a stipulated penalty of $3,000 per Day for each Day that the payment is late.

32.    Compliance Milestones

a.    The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraph b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1000 | 1st through 14th Day |
| $2000 | 15th through 30th Day |
| $4000 | 31st Day and beyond |

b.    Stipulated penalties shall accrue in the event of: (1) failure to timely identify to EPA a third party auditor in accordance with Paragraph 11 of this Consent Decree; (2) failure to timely commence audits in accordance with Paragraph 12 of this Consent Decree: (3) failure to timely submit Audit Reports, Audit Action Plans, and Supplemental Audit Action Plan in accordance with Paragraph 15 of this Consent Decree; (4) failure to timely complete the Audit Response Activities in accordance with Paragraph 16 of this Consent Decree or, if resolution of such activities cannot be completed within the timeframes specified in Subparagraph 16.a. of this Consent Decree, failure to submit documentation to the United States in accordance with Subparagraph 16.b. of this Consent Decree; (5) failure to timely take required actions in accordance with Paragraph 18 of this Consent Decree; (6) failure to timely resubmit a plan, report, or other item, or disapproved portion thereof, for approval in accordance with Paragraph 19 of this Consent Decree; or (7) to timely correct any deficiencies identified by EPA in accordance with Paragraph 21 of this Consent Decree.

33.    <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th Day |
| $1000 | 15th through 30th Day |
| $1500 | 31st Day and beyond |

34.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.  Except as provided in Paragraph 30, Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

35.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

36.    Stipulated penalties shall continue to accrue as provided in Paragraph 34, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing,

-25-

together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

       c.    If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

37.    Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 8, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which alleged violation(s) the penalties are being paid.

38.    If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

39.    Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of Section 112(r) of the CAA and/or Section 325(c) of EPCRA, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.  <u>FORCE MAJEURE</u>

40.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

41.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when Defendants first knew that the event might cause a delay.  Within seven (7) Days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event.

-27-

Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendants shall be deemed to know of any circumstances of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

42.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. Within thirty (30) Days of receiving a request for an extension, EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event, or shall issue an interim extension pending further review.  If EPA does not respond to such a request in writing within thirty (30) Days of its receipt, the request will be deemed to have been granted as an interim extension pending further review.

43.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

44.     If Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 40 and 41, above.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.  DISPUTE RESOLUTION

45.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

46.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within seven (7) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

47.    Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United

States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

48.     The United States shall serve its Statement of Position within forty five (45) Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

49.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

51.     Defendants shall have the burden of proof, and the standard and scope of review shall be that provided by applicable law.  The United States reserves the right to argue that the dispute is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with the law, and Defendants reserve the right to oppose this position.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 36.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.   SUPPLEMENTAL ENVIRONMENTAL PROJECT

52.     Defendants shall implement a Supplemental Environmental Project ("SEP"), in accordance with all provisions of Appendix B of this Consent Decree.  The SEP shall be completed no later than one year after the Effective Date of this Consent Decree in accordance with the schedule set forth in Appendix B.  The SEP shall involve the installation of container fill scale monitoring equipment at Defendants' chlorine repackaging facilities in Festus, Missouri; Cleburne, Texas; Bellevue, Nebraska; Mobile, Alabama; Reserve, Louisiana; and Chattanooga, Tennessee.  The benefits of such an expanded automation program are outlined in Appendix B.

53.     Defendants are responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  Defendants may use contractors or consultants in planning and implementing the SEP.

54.     With regard to the SEP, Defendants certify the truth and accuracy of each of the following:

a.     that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendants in good faith estimate that the cost to implement the SEP is $111,764.

b.     that, as of the date of executing this Decree, Defendants are not required to perform or develop the SEP by any federal, state, or local law or regulation and are not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEP is not a project that Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree.

d.     that Defendants are not party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA by Defendants within two (2) years of the date of Defendants' execution of this Consent Decree (unless the project was barred from funding as statutorily ineligible);

e.     that Defendants are not otherwise aware of any open federal financial assistance transaction that is funding or could fund the same activity as the SEP;

f.     that Defendants have not received and will not receive credit for the SEP in any other enforcement action; and

g.     that Defendants will not receive any reimbursement for any portion of the SEP from any other person.

-32-

h.      For purposes of this Paragraph "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for providing federal financial assistance whose performance period has not yet expired.

55.     SEP Completion Report.  Within 30 days after the date set for completion of the SEP, Defendants shall submit a SEP Completion Report to the United States, in accordance with Section XIV (Notices) of this Decree.  The SEP Completion Report shall contain the following information:

a.      a detailed description of the SEP as implemented;

b.      a description of any problems encountered in completing the SEP and the solutions thereto;

c.      an itemized list of all eligible SEP costs expended;

d.      certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

e.      a description of the environmental and public health benefits resulting from implementation of the SEP.

56.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's Completion Report.

57.     Within 90 days after receiving the SEP Completion Report, the United States shall notify Defendants whether or not Defendants have satisfactorily completed the SEP.  If Defendants have not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section VII of this Consent Decree.

58.     Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs shall be resolved under Section IX (Dispute Resolution) of this Consent Decree.

59.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 26.

60.     Any public statement, oral or written, in print, film, or other media, made by Defendants making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States of America v. DPC Industries, Inc. and DPC Enterprises, LP, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

## XI.  INFORMATION COLLECTION AND RETENTION

61.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendants' compliance with this Consent Decree.

-34-

62.     Until five (5) years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

63.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants.

However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

64.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

65.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

66.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

67.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 66.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Clean Air Act, EPCRA, or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 66. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed

-36-

by, Defendants' Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

68.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities, or Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 66 of this Section.

69.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, EPCRA, 42 U.S.C. § 11001 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

70.    This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the

-37-

rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

71.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

72.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV.  NOTICES

73.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:     eescasemanagement.enrd@usdoj.gov
                                      Re: DJ # 90-5-2-1-09973

As to the United States by mail:      EES Case Management Unit
                                      Environment and Natural Resources Division
                                      U.S. Department of Justice
                                      P.O. Box 7611
                                      Washington, D.C.  20044-7611
                                      Re: DJ # 90-5-2-1-09973

As to EPA:                            Chris Dudding
                                      U.S. EPA, Region 7
                                      Office of Regional Counsel
                                      11201 Renner Road
                                      Lenexa, KS 66219

                                      and

-38-

<div style="margin-left:40%;">

Jodi Harper
U.S. EPA, Region 7
Air and Waste Management Division
11201 Renner Road
Lenexa, KS 66219

</div>

As to Defendants:

<div style="margin-left:40%;">

Rick Karm
DX Group
P.O. Box 130410
Houston TX 77219-0410

and

Scott Janoe
Baker Botts L.L.P.
910 Louisiana St.
One Shell Plaza
Houston, TX 77002

</div>

74.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

75.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

76.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.  RETENTION OF JURISDICTION

77.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

78.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

79.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 51 the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

80.     After Defendants have completed the requirements of Section V (Compliance Requirements) of this Decree, the requirement of Section X (Supplemental Environmental Project) and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

81.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for

-40-

termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

82.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section IX of this Decree.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 47 of Section IX, until 90 Days after service of its Request for Termination.

## XIX.  PUBLIC PARTICIPATION

83.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

84.     Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

85.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION

86.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

87.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

## XXIII.  APPENDICES

88.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the List of Chlorine Repackaging Facilities owned by DPC Industries, Inc. and DPC Enterprises LP;

"Appendix B" is the Fill Scale Automation Supplemental Environmental Project.

Dated and entered this 24 day of ___March_____, 2015.


s/Laurie Smith Camp
_____
UNITED STATES DISTRICT JUDGE
District of Nebraska

FOR PLAINTIFF UNITED STATES OF AMERICA:

> JOHN C. CRUDEN
> Assistant Attorney General
> Environment & Natural Resources Division

> 02-02-15
> Date

> THOMAS A. MARIANI, JR.
> Deputy Section Chief
> Environmental Enforcement Section

> 2/5/15
> Date

> KATHERINE L. MATTHEWS
> Trial Attorney
> United States Department of Justice
> Environment & Natural Resources Division
> Environmental Enforcement Section
> 999 18TH Street, Suite 370
> Telephone: (303) 844-1365
> Fax: (303) 844-1350
> Email: Kate.Matthews@usdoj.gov

> DEBORAH R. GILG
> United States Attorney
> District of Nebraska

> LAURIE KELLY
> Assistant United States Attorney
> 1620 Dodge Street, Suite 1400
> Omaha, NE 68102-1506

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

12|15|14
Date:        KARL BROOKS
             Regional Administrator
             U.S. Environmental Protection Agency
             Region 7
             11201 Renner Road
             Lenexa, Kansas 66219


12/15/14
Date:        DAVID COZAD
             Regional Counsel
             U.S. Environmental Protection Agency
             Region 7
             11201 Renner Road
             Lenexa, Kansas 66219


12/15/2014
Date:        CHRIS DUDDING
             Assistant Regional Counsel
             U.S. Environmental Protection Agency
             Region 7
             11201 Renner Road
             Lenexa, Kansas 66219

FOR DEFENDANT DPC ENTERPRISES, LP:

_12·8·2014_

Date

DPC Enterprises, LP
by DPC Enterprises, GP, LLC, its general partner
by R. C. Karm, its President
Address:  300 Jackson Hill St., Houston, TX  77007


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:
Title:
Address:
Ph. Number

FOR DEFENDANT DPC INDUSTRIES, INC.:

_12-8-2014_
Date

William E. Ingram, CFO

Address:  300 Jackson Hill St., Houston, TX  77007

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:
Title:
Address:
Ph. Number

**APPENDIX A**

**Chlorine Repackaging Facilities**

Chlorine Repackaging Facilities owned by DPC Industries, Inc.:

Bellevue, Nebraska
Rosemount, Minnesota
Hudson, Colorado
Cleburne, Texas
Albuquerque, New Mexico
Sweetwater, Texas


Chlorine Repackaging Facilities owned by DPC Enterprises LP:

Glendale, Arizona
Festus, Missouri
Reserve, Louisiana
Mobile, Alabama
Tampa, Florida
Chattanooga, Tennessee

**APPENDIX B**

**CONTAINER FILL SCALE AUTOMATION
SUPPLEMENTAL ENVIRONMENTAL PROJECT**

### A.  Background and Purpose

As part of the settlement embodied in the Consent Decree, Defendants will implement a Supplemental Environmental Project ("SEP") to install container fill scale monitoring equipment at their chlorine repackaging facilities in Festus, Missouri; Cleburne, Texas; Bellevue, Nebraska; Mobile, Alabama; Reserve, Louisiana; and Chattanooga, Tennessee, in accordance with the requirements of Section X of the Consent Decree and the terms, criteria, and procedures identified in this Appendix B. Installation of container fill scale monitoring equipment at Defendants' chlorine repackaging facilities will reduce the risk of a chlorine release, a substance regulated pursuant to the Clean Air Act's Risk Management Program.  Defendants are not already required to perform this project under any applicable law or regulation.

### B.  Project Description

Defendants will install container fill scale monitoring equipment on the 150 lb cylinder and ton container fill stations at their Festus, Missouri; Cleburne, Texas; Bellevue, Nebraska; Mobile, Alabama; Reserve, Louisiana; and Chattanooga, Tennessee chlorine repackaging facilities.  This will reduce the risk of a chlorine release caused by an overfilled container by continuously monitoring the filling operations and setting off an alarm in the event of an operator error. These units are assembled by the Perry Scale Company (www.perryscale.com) and incorporate the GSE Digital Indicator (Model 562SS).  These units have been tested at the DPC packaging plant located in Houston, Texas and have been very reliable.

Currently, filling operations are monitored by operators who visually observe the chlorine fill weight of the containers. This process relies on the operator to constantly watch the scale read out to ensure that the containers are not overfilled.  An overfilled container is a hazard and more likely to rupture, releasing its contents.

The new fill scale monitoring equipment provides a digital notification system to manage filling operations and prevent chlorine container overfill. Scale heads are programmed to monitor filling operations, while visual and aural indicators guide operators to properly fill chlorine containers and warn against overfills. These indicators include lights that provide visual feedback to operators on the status of the filling process. A green light indicates that the container is 95 percent filled, a yellow light indicates that the container is properly filled, and a red light indicates that the container has been overfilled. Such indicators provide operators with constant feedback during filling operations and reduce the risk of container overfill.  The equipment is also programmed to check the gross weight of the container to verify that an overfill condition does not exist.

Scale heads can also be programmed to track containers and record fill date and time, operator identification, serial number, container stamped-tare weight, actual tare weight, gross weight, and net weight.  This system will eliminate errors in recorded data that are common when critical information is handwritten by the operator.

## C.  Project Benefits

The project will reduce the risk of a chlorine release at Defendants' chlorine repackaging facilities in Festus, Missouri; Cleburne, Texas; Bellevue, Nebraska; Mobile, Alabama; Reserve, Louisiana; and Chattanooga, Tennessee, as well as during transport and at the end users' sites.  The density of liquid chlorine decreases as the temperature increases.  If a container is overfilled it is possible the container will become liquid full due to the density change and the hydraulic pressure on the container may cause a catastrophic failure at the repackaging site, during transport, or while at the end user's site.

In addition, the installation of container fill scale monitoring equipment will reduce the risk of diversion of and improper uses for chlorine, which is a substance regulated pursuant to the Clean Air Act's Risk Management Program.  This system will amplify Defendants' risk management capacities by providing a detailed history of the filling process.  Finally, this project will add another layer of protection in preventing a chlorine release and reduce the Defendants' emergency response demands at the Festus, Missouri; Cleburne, Texas; Bellevue, Nebraska; Mobile, Alabama; Reserve, Louisiana; and Chattanooga, Tennessee facilities as well as the areas that they service.

## D.  Project Cost and Deadlines

Defendants estimate the following costs for this project based on quotes from suppliers and contractors.

The equipment cost will be $2,500 per scale head.  Pricing was provided by the Perry Scale Company who will assemble and program the scale heads.

Installation will be done by local contractors at each site.  Based upon discussions with several local instrumentation contractors, Defendants estimate that it will take two technicians to install three units in an 8 hour day.  The average rate for instrumentation technicians is $86 per hour.

| Component | Cleburne | Festus | Omaha | Mobile | Reserve | Chattanooga |
|---|---|---|---|---|---|---|
| No. of Scales | 8 | 6 | 5 | 8 | 6 | 4 |
| Equipment costs | $20,000 | $15,000 | $12,500 | $20,000 | $15,000 | $10,000 |
| Installation days | 3 | 2 | 2 | 3 | 2 | 2 |
| Labor costs | $4,128 | $2,572 | $2,752 | $4,128 | $2,572 | $2,752 |
| Site Total | $24,128 | $17,752 | $15,252 | $24,128 | $17,752 | $12,752 |
| **Project Total** | **$111,764** | | | | | |

Defendants will complete the Container Fill Scale Automation SEP by no later than one year after the Effective Date of this Consent Decree.

**E.  SEP Completion Report**

Defendants will prepare and submit to EPA a SEP Completion Report as required by Paragraph 55 of the Consent Decree within 30 days after the date set for completion of the SEP.